May it please the Court. My name is Bridget Rose. I'm here on behalf of the appellee, Howard M. Ehrenberg, in his capacity as liquidating trustee of the debtors and the underlying bankruptcy proceeding. We are here today asking for this court to affirm, following two lower court decisions that both determined there was no basis to vacate a default judgment that had been entered against the appellant, the judgment avoided as a fraudulent conveyance, a transfer of a new appellant purchased with the debtor's money. We are also asking this court to grant a motion to strike new arguments raised in appellant's reply brief. Appellant did not request oral argument and so is not here today. We wanted to appear to be able to answer any questions that the court may have given the new arguments that were raised, but if none, we are also happy to rest on that. Rule 15 or Rule 21, a terrible mess. That is, we said in Washington that it was Rule 15 and that was fine, but that was a pro se case in which the need, the requirements of 21 were also met. Then we have a summary order that says the opposite, and you've got other courts by and large saying Rule 15 is fine. We're a mess. The second thing is, we're also a mess on a default. You need all three of the problems with a default in order to hold it, or is willfulness enough? Because I'm not sure that here there isn't something of the merits about whether the property should go back or the money, so that if you were looking at the merits, the district court said nothing of the merits. Nothing from the district court was a bit sloppy about that. On the other hand, we got lots of cases that say that where willfulness is as strong as it is here, it's enough. So what do we do? Well, to address your first point about amending the complaint, Washington, the New York City Board of Estimate, governs this case and is controlling precedent. In that case, the court very clearly said that the pro se plaintiff had had a right to file an amended complaint without court leave before the defendant answered. That is controlling and governs the exact facts of this case. At the time that we filed the first amended complaint, adding the appellant, no responsive pleading or motion had been filed. We then thus had a very clear right to file without court leave the amended complaint, adding the defendant. The other case that you cited, the summary order, Renard, which was rendered five years after Washington. As you said, a summary order, it does not have precedential effect in this court under this court's own local rules. And also, it's distinguishable because in Renard, the plaintiff had filed a motion to amend, to add a judge as a defendant after the case had already been dismissed. The court there found, stated in dicta, even though it was not at issue, Rule 15 was not at issue at that time, stated in dicta that an amendment adding a party always requires court leave under Rule 21, even if brought within the time of Rule 15. But that was in a dicta statement and not at issue in that particular case. And also, the court in that case used its discretion to deny the amendment as futile because the judge was absolutely immune from the claims that were being sought to be brought against it. We don't have any of those types of issues in this case. So we would posit that Washington is the controlling precedent in this case. And as you also noted, other circuits have also found, the majority of circuits have found that Rule 15 permits amendments as a right to add parties. And they cite Washington saying the Second Circuit decided that in Washington. And that's the majority of courts in those cases. And also, Rule 15, allowing amendments as a right to add parties is, on a practical basis and a logical basis, it makes sense to allow an amendment to add a party early on in the litigation before issue has been joined, before discovery has proceeded. There's minimal risk to other parties or no risk that there's going to be prejudice. And it allows all the parties to be brought before the court. And I would also add that even if a court is on its own without court leave, the court always has discretion to deny an amendment or drop a party under Rule 21 and under Rule 19. As to your second point, as to whether the three discretionary factors have to be met, I would first say the appellant brought its initial motion to vacate under Rule 60B-4, which is that the judgment is void. The Bankruptcy Court considered the discretionary factors because, arguably, it didn't want the appellant to come back later to argue a different section of Rule 60B applied, which it had a right to do, so it addressed it all at the outset. But they really brought the motion under 60B-4 to vacate for lack of personal jurisdiction, which was not the case. The court had jurisdiction based on the proper filing and service of the First Amendment complaint. But the Bankruptcy Court and the discretionary factors, instead, all of those weighed against vacature anyway because the default was willful, there was prejudice to the liquidating trustee if the default judgment was vacated, and the appellant did not have a meritorious defense. And the District Court did address in its decision that all the defenses that were posed by the appellant found none to have merit. But as you mentioned, it is true that there is core precedent that says even if you find willfulness alone, that's enough to deny a motion to vacate. But the courts went further, the District Court and the Bankruptcy Court, and they looked at every other discretionary factor and said they all weighed against the vacature anyway. So was there a meritorious defense here as to whether the $3.8 million should have been all that came back to the estate versus the $23 million value of the property? No, there was no meritorious defense to that. The Bankruptcy Code is quite clear that once you avoid a transfer, the trustee is entitled to recover the physical asset itself or the value of that asset. Does the statute really say that, though? The statute does say that. It says you can avoid... So if it is discretionary what you can do, then isn't there a defense that in this case they should have done the other thing? That is, isn't it at least meritorious, not necessarily winning, that the person has a right to argue to the court that in its discretion it should do the opposite of what it did? Well, I think that he did argue that, and the court said we don't agree. Well, did the court say I don't agree, I exercise my discretion, or did it say there is no argument? I think the court said there is no argument that the trustee was definitely allowed to recover the mortgage itself as being the value of the $3.8 million transfer. It's no different than if the debtor, you know, if the principal of the debtor took money from the debtor to buy a house. You are not limited to just... You can trace the funds directly into that house, and the trustee is entitled to recover the house, and that's exactly what happened here. The $3.8 million was transferred to purchase a mortgage. That $3.8 million is gone. All that's left is the mortgage, and that's all of the assets that the appellant has. And it doesn't result in a windfall to the trustee? It does not, because the trustee is entitled to... First of all, we don't know what the value of the mortgage is. The mortgage, which was on paper a $23.7 million mortgage, was purchased for $3.8 million. The appellant has not put in any record showing what the value of the mortgage actually is. And if the trustee would not be receiving a windfall and is entitled to appreciation, even a property that's transferred fraudulently, even if it appreciates, the trustee would be entitled to get that too. And in fact, if he did not... If the appellant was permitted to keep the mortgage, the appellant is the one who'd be receiving the windfall, because the And now it gets to hold the proceeds of the fraud. Can I draw your attention to the business records exemption that was part of the service of process issue? I believe that the only evidence in the record establishing the predicates for the business record exception is the Lazara Declaration. But it doesn't seem to address the various prongs of Rule 803-6, that these records were kept in the ordinary course of business, etc. So how can that be sufficient to have established that here's the exception? And then separately, even if it wasn't sufficient, is this harmless error because it was properly served on the Dover address? As to your first question, Lazara's declaration satisfied the business records exception because he did testify how those records were kept stored and maintained by the debtors. He led the investigation of the forensic investigation of the debtors. He said that those the email and the bank records came from the debtor's servers. But is that the same as being kept in the ordinary course of business, just the fact that they existed on the server? Well, I think the district court even noted it went further. It said those would be kept in the regular course of business because they're central to the reason why the appellant was formed, which is was to get this mortgage. And in part of forming the appellant, Paul Parmar, who was the individual controlling the debtors, opened up a bank account in appellant's name and listed the address as this Hazlitt address that we use for service. And your other, I'm sorry, what was your other question? The other question was whether it's harmless because there was service properly made on the Dover address anyway, even if there was error. I would say it was harmless for that reason. The service was made on the registered agent, right, as you're saying, at its correct address at the time that the first amended complaint was served. And the trustee was entitled to rely on these records, corroborating records, and email from the individual who was acting as appellant's agent to form appellant saying to M&T Bank, open up a bank account in appellant's name and use Hazlitt address. And then the actual bank records showing that the account was in fact open and the Hazlitt address was used. So the trustee was entitled to rely on that information, which it found in the debtor's records, to determine that that was a reasonable place to serve the appellant. And I would also note it's not reversible error because the appellant in this case appeared through his principal, his claim principal, Mr. John Petrozza, who had actual notice of the adversary proceeding after the first amended complaint was served, appeared in it and filed an objection to the liquidating trustee's motion to settle certain complaint. While he says he appeared on behalf of other entities, he's not given any explanation as to how he could know that this case existed and these other entities were involved, but not know that appellant, who he claims to be the owner of, was also involved. And the court, the bankruptcy court, found his testimony to be simply not credible, that he was unaware of this proceeding. All right. Thank you, Kamala.